25-945CB, Leonardo Bautista v. David C. Banks, et al. And we have Mr. Vellantoni. Correct, Your Honor. For the appellant. And I understand, sir, that you would like to reserve two minutes for rebuttal, is that right? Correct, Your Honor. Okay. You may proceed whenever you're ready. Thank you and good morning. May it please the Court. Here the IHO found that appellant prevailed on all three prongs of the Burlington-Carter test. The IHO expressly found there was no reason not to grant the parent full relief. The SRO affirmed, the District Court agreed, yet transportation funding and one-to-one nursing services were denied entirely, not reduced but denied, for a non-ambulatory, non-verbal four-year-old with a seizure disorder who cannot access education without these  This Court's decision in AP holds that parents prevailing on the first two prongs of the Burlington-Carter test enjoy a presumption of full reimbursement. I'm sorry. No, so can I just direct your attention to the final hearing before the IHO where my understanding is that counsel for Bautista confirmed that the, quote, total amount, end quote, she was seeking was $267,097.60. How do we deal with that when someone expressly says to the IHO, we're looking for $267, then they get $267, and then later come back effectively and say, I didn't mean that that was the total amount. When I said total, I meant partial. I mean, really, it seems hard for us to then say, when a lawyer says, this is the total amount I want, to go back and mean, no, they wanted more. Can I read that in context, Your Honor? Yeah, please. In the record below at page 326, counsel, the hearing officer begins, what is the parent asking for at this time? May 26, 2023, parent came back, the DOE never appeared in any of the proceedings with additional medical testimony. The counsel says, yes, Your Honor. So based on the previous discussion in the last hearing, the parent is still seeking one-to-one nursing services, and that's why we have disclosed additional evidence to support the student's needs for nursing. So exhibit L shows the medical record. Parents L shows the medical records, and parents M is the pediatrician's statement showing this student's complex medical history and their requirement for nursing. Now the hearing officer says, all right, give me a minute, all right. So the total amount the parent is seeking is $267,097.60, and counsel says, that is correct. However, that amount was for tuition. No, no, I know that. That's my point, is that the hearing officer rehearses everything and then basically says, all right, so the total amount you're seeking is $267, and then Mr. Lagman says, that is correct. My point is, after rehearsing all that, and the hearing officer is basically asking for clarification, great, what's the bottom line here, is told as $267, we're to assume that that's not what the hearing officer was not allowed to consider, that that was the total amount. Your Honor, in context, yes, because there's an argument right before it for nursing and reimbursement. So when he asks, is all you're seeking, in essence, tuition, that... He didn't say tuition. Well, that's the $267 is the exact amount of the tuition cost.  So when... It may have been that there's a misunderstanding on the part of both the hearing officer, but it also seems on the part of counsel for Ms. Bautista. I'm not, I'm not... And if everyone was operating under the wrong assumption, then it's sort of, then how can you fault the hearing officer when they said, well, okay, just tell me the total amount. You want the total amount. That's what you want. That's what you get. It turns out there was something else. I'm not saying fault, Your Honor, but to have that colloquy serve as a waiver, I mean, the due process complaint makes clear the parent was seeking full tuition, one-to-one nursing, special education transportation. There's a transportation contract put into the record. These hearings, unfortunately, I'm not making excuses. You know, they're conducted over Zoom. Right after that, he says, that's correct. And the hearing officer says, all right, all right. Anything else? And then he says, give me a second. And the same day issues a decision. It seems to me, although he asked that specific question, where that paragraph right before is talking about a separate service, the value of which is $250,000 and is $110,000 for transportation, to ask that specific amount, $267,097.60, is tantamount to saying, so all you're seeking is tuition. Now, if he had said that, maybe counsel would have said, no, no, no, because we just finished discussing that nursing was necessary and provided, and that should have been considered. Certainly, the transportation should have been considered. The DOE's own IEP indicates the student needs special transportation. Students with disabilities like this student, who's wheelchair-bound, can't get to and from school. I mean, you know, with... Can I ask a clarifying question? And you tell me whether this is in the record or not. It wasn't entirely clear to me. Did Ms. Bautista, the parent here, did she actually wind up having to pay for one-to-one nursing services and special transportation services for that, given the year that's at issue here? Did she pay that out of pocket, or is that not in the record? She's obligated to pay, in the contracts that are in the record. I'm not asking whether that's a contract. I'm asking, did she pay? No, because, no, no, Your Honor, that obligation is suspended pending the outcome of the administrative and judicial proceedings. So eventually, she will be liable for that amount if, obviously, we don't prevail. But at this time, the contracts allow that amount to be suspended pending the outcome of these proceedings. What we're asking here, Your Honor, because the parent did prevail on those first two prongs, legally, the parent's entitled to the relief that she seeks. And although that statement at the end, it's in the record, yes, is this what you're seeking, yes, the due process complaint, it's clear the parent was seeking more. Can I also ask, and again, you tell me, this is probably outside the record, and if so, you can either make a representation or not, if you're aware of it. But what is the current status of Ms. Bautista's child's free, appropriate public education for the subsequent school years? Is it, are those being contested? Are those, have those been settled? I mean, we're a couple of years down the road now. Correct. This is 22-23. Yeah, I understand. I don't know, I don't know that this school year, there was a proceeding for the last school year. I'm not sure how that ended, Your Honor. Okay, that's fine. So going back to AP, and this Court's decision in Ferrara would have required the district court to do its own independent analysis without deferring to the SRO at all. This was an equities analysis, at least that's what they called it, but prong three, the equities, is supposed to determine the amount, not entitlement. After prevailing on prong one and two, the parent is entitled to the prong three. Can I just jump in for a second? I mean, you talk a lot about being entitled to full reimbursement, but part of the problem I see is there aren't specific amounts being requested. It's not as if something was submitted saying, you know, it should be this many thousands of dollars for transportation and this many for nursing, and then they had an opportunity to consider the equities and consider whether all of that should be  And I almost hear your argument now is, well, you know, she's entitled to full reimbursement. We don't even know what that means, and we don't have a record of, like, what those numbers are. And the amounts that are being sought are, I think, relevant to the equity consideration, I think. We do have a record for transportation. The record agreement, I mean, I'm sorry, the transportation agreement is in the record starting at $170. Right, but we don't have, and that agreement says it's $233. $233 per trip for two trips a day. The yearly contract is $102,000. Right, so she is seeking how much? The amount of that contract, $102,000 for the entire school year. That's the contract. Although the contract breaks it down into days and rides, it's not what's charged. It's basically how that number is arrived at. It's not a per diem service unless, and this has happened, an IHO orders, you know, the dealings shall reimburse only for rides actually provided. Right, but the fact that the IHO was never told at the time of this hearing when they're asking about the $200,000, we're also seeking $100,000 for transportation and some unknown amount for one-to-one nursing. Was an amount submitted for that? That contract or the agreement was not put into evidence and that was, we requested at the district court level. Transportation is $102,000 for the year. So what if, you know, if we were to agree and say, you know what, she's entitled to full reimbursement, I don't even, I don't understand even what that number would be. I mean, she's entitled to $300,000 or $400,000, it just, the details matter because part of what's considered is, is the amount, should it be reduced? Is it equitable? But the amounts aren't being put forward, like this is how much we want, X, Y, and Z. Just like the IHO awarded $267,000 for tuition pursuant to that contract. This contract makes clear it's $102,000, $102,054. Now, when I say full reimbursement, in a normal hearing, that would be full reimbursement subject to a reduction. The DOE can rebut the presumption of full reimbursement, but the DOE didn't show up here, so you don't have as robust a record as you would if they were cross-examining these witnesses on the cost. The contract went into evidence, $233,000 a day, two trips times 219 days in the school year, that's the amount, that's how it's calculated, same as the tuition. And I can see that the nursing contract was not put into evidence, that was something we asked the district court to consider because the district court can't consider additional evidence, the district court denied that request. What we're asking is to remand it and for the district court to determine what the appropriate amount of reimbursement is. I'm not asking you necessarily to do that here, but remand it to the district court, the district court can then decide whether that contract on the record satisfies, Your Honor, by a preponderance that the $102,000 was what was owed for transportation. All right, Mr. Valentoni, we have your argument. You have reserved two minutes for rebuttal. Why don't we hear from counsel for the FLE, Mr. Magnetti. Thank you, Judge. Good morning, Your Honors. May it please the Court, Shane Magnetti for the FLEs. The district court providently determined that Appellant did not demonstrate her entitlement to nursing and transportation costs by a preponderance of the evidence under Prong 3. The Appellant offered scant evidence to substantiate those costs, which she was required to do before they could be imposed on the Department of Education in addition to the $267,000 for which it was already responsible. Turning first to the nursing costs, no evidence in the administrative record established that the student actually had an individual nurse at I-BRAIN, that the parent had actually contracted for and agreed to pay for that service, what it cost, and whether that cost was reasonable. The administrative record contained medical records, which referenced a home nurse, but nothing of an individual school nurse. The I-BRAIN IEP likewise did not identify any nursing provider or any agreement for nursing services. It merely asserted that A-B required an individual paraprofessional and individual nurse without differentiating between their functions or explaining why both were necessary simultaneously. The affidavit of the I-BRAIN director and the unsworn physician's letter were deficient for the same reasons. Again, they did not establish that this service was actually provided or that the parent was actually on the hook to pay for it. As for the transportation costs, Judge Nardini, as you pointed out, at the end of the hearing, Appellant's counsel asked only for $267,000 for tuition and for the related services as set forth in the contract. Though there was some discussion of nursing costs leading up to that exchange, counsel never once addressed transportation costs at the hearing itself. And even if Appellant had not abandoned that claim, the transportation contract was not sufficient to demonstrate her entitlement to that amount. Today was the first time that I have heard Appellant's counsel set forth the actual number that they're seeking for transportation costs. The agreement sets forth a flat rate of $233 per trip. The agreement also contains a modification clause, which shows that it can be changed at any time and contemplates that the parent will be seeking public funding and might not receive it. Beyond that, even if we accepted that that obligated the parent to pay the full amount of the contract, Appellant was also required to demonstrate that that cost was a reasonable one, which she did not do. There's no evidence that $233 per trip is akin to what the Department would have been required to fund in the first instance as required under this Court's precedent in Steele v. DiBuono. Lastly, very briefly, I would just like to point out that in their reply brief, Appellant raises a few arguments for the first time. She argues that the District Court conflated the Prong 2 and Prong 3 analyses. That argument is not properly before this Court. It's not preserved. And likewise, on reply, she argues for the first time that the District Court erred in not considering the nursing contract, which she offered for the first time on judicial review and not before the IHO. That argument is likewise not preserved. I'm happy to answer any questions Your Honors may have. Thank you very much. We have your argument. Mr. Bellantoni, you have reserved two minutes for rebuttal if there's something that you would like to add. Just briefly, Your Honor, the DOE didn't show up at the administrative hearings to challenge any evidence that was put into the record. I understand that appeal. Now they challenge legal arguments. Fine. But to challenge the sufficiency of the evidence below when they didn't come to the hearing to do that, it seems that they... We talk about waiver. It's the district who either waives, abandons, or forfeits their right to do that when they don't show up. Counsel says this is the first time he's heard the amount of the contract. Well, through the hearings, DOE never showed up to hear what the parent was actually arguing. The record is clear, and there's more than just mere references. The SRO references, progress notes. There was no doubt the student had the... Where in the administrative record did counsel for Ms. Bautista offer a specific number, dollar amount requested for transportation services? Because I think that is the question. Well, when... No, answer that. Where in the administrative record? Or does it not appear in the administrative record? The $102,000 number does not appear. That was my only question. Yes. But again, Your Honor, I would just again point out that 233 times 2 times 219 is $102,000. So whether the parent asked for that specific number or submits a contract, that's binding, just like the enrollment contract. It's really no different. The IHO in his FOFD really didn't discuss the nursing or transportation at all. The SRO addressed it, but the IHO didn't find that there was insufficient evidence, there was no evidence, didn't make a finding on nursing or transportation, just awarded the tuition. The SRO then addressed that for the first time on appeal. Thank you, Judge. Thank you both very much. We will take the case under advisement.